## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENWOOD DIVISION

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION and GE CAPITAL COMMERCIAL, INC., | Case No. |
| Plaintiffs, | |
| v. | |
| ROBERT G. SHIREY and BULLDOG ERECTORS, INC., | |
| Defendants. | |

## COMPLAINT

General Electric Capital Corporation and GE Capital Commercial, Inc., by their undersigned counsel, and for their Complaint against Robert G. Shirey and Bulldog Erectors, Inc., state as follows:

### PARTIES

1.      Plaintiff General Electric Capital Corporation ("GE Capital") is a corporation organized under the laws of Delaware with a principal place of business located in Norwalk, Connecticut.

2.      Plaintiff GE Capital Commercial, Inc. ("GECCI") is a corporation organized under the laws of Delaware with a principal place of business located in Holliday, Utah.

3.      Robert G. Shirey ("Shirey") is a natural person and a resident of the State of South Carolina.

4.      Bulldog Erectors, Inc. ("Bulldog") is a South Carolina corporation with a principal place of business located at 245 Industrial Park Road, Newberry, South Carolina (the "Newberry Location").

## JURISDICTION

5.      The parties are of diverse citizenship.

6.      The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

## VENUE

8.      The claims forming the basis of this Complaint, or a significant portion thereof, arose in that geographical area which is contained within the federal judicial district known as the District of South Carolina.

9.      Venue is properly in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

A.      The First Loan.

10.     On or about March 27, 2007, Shirey and Citicapital Commercial Corporation ("Citicapital") entered into that certain Loan and Security Agreement (the "First Loan and Security Agreement"), a copy of which is attached hereto as Exhibit A, pursuant to which Citicapital agreed to finance Shirey's purchase of certain equipment described more fully on Schedule A attached thereto (the "First Loan Equipment"), in exchange for, *inter alia*, payments in the amount of $4,245,984.00.

11.     Pursuant to Section 2.1 of the First Loan and Security Agreement, Citicapital was granted a first priority security interest in the First Loan Equipment in order to secure the amounts due under the First Loan. *First Loan and Security Agreement*, § 2.1.

- 2 -

12.     In addition, in order to further secure the amounts due under the First Loan and Security Agreement, Shirey granted Citicapital a security interest in "all Leases, other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including guaranties thereof" with respect to the First Loan Equipment. *Id.*, *Rider A*, p. 1.

13.     An event of default is deemed to have occurred under the First Loan and Security Agreement if, *inter alia*, Shirey fails to pay when due any amount owed by him to Citicapital under the First Loan and Security Agreement. *Id.*, § 5.1. Upon the occurrence of an event of default, Citicapital is entitled to, *inter alia*, exercise all of the rights and remedies of a secured creditor under the Uniform Commercial Code, including the right to enter any premises where the First Loan Equipment may be located without judicial process and take possession thereof. *Id.*, § 5.2.

14.     On or about March 27, 2007, Shirey leased the First Loan Equipment to Bulldog. In connection with the this lease, Bulldog executed a Lessee's Agreement, a copy of which is attached hereto as Exhibit B, pursuant to which Bulldog acknowledged and agreed that all its rights under the lease, including its rights to possession of the First Loan Equipment, are subordinate, junior and subject to the rights and claims of Citicapital.

15.     On June 2, 2009, Shirey and GECCI entered into a certain Modification Agreement (the "First Loan Modification" and, together with the First Loan and Security Agreement, the "First Loan"), pursuant to which Shirey and GECCI agreed, *inter alia*, to modify the payments required from Shirey under the First Loan and Security Agreement. A copy of the First Loan Modification is attached hereto as Exhibit C.

        B.      The Second Loan.

16.     On or about July 14, 2008, Shirey and Citicapital entered into that certain Loan and Security Agreement (the "Second Loan and Security Agreement"), a copy of which is attached hereto as <u>Exhibit D</u>, pursuant to which Citicapital agreed to finance Shirey's purchase of certain equipment described more fully on Schedule A attached thereto (collectively, the "Second Loan Equipment"), in exchange for, *inter alia*, payments in the amount of $8,623,753.20.

17.     Pursuant to Section 2.1 of the Second Loan and Security Agreement, Citicapital was granted a first priority security interest in the Second Loan Equipment in order to secure the amounts due under the Second Loan and Security Agreement. *Second Loan and Security Agreement*, § 2.1.  In addition, in order to further secure the amounts due under the Second Loan and Security Agreement, Shirey granted Citicapital a security interest in "all Leases, other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including guaranties thereof" with respect to the Second Loan Equipment. *Id.*, *Rider A*, p. 1.

18.     An event of default is deemed to have occurred under the Second Loan and Security Agreementif, *inter alia*, Shirey fails to pay when due any amount owed by him to Citicapital under the Second Loan and Security Agreement.  *Id.*, § 5.1.  Upon the occurrence of an event of default, Citicapital is entitled to, *inter alia*, exercise all of the rights and remedies of a secured creditor under the Uniform Commercial Code, including the right to enter any premises where the Second Loan Equipment may be located without judicial process and take possession thereof. *Id.*, § 5.2.

19.     On or about July 14, 2008, Shirey leased the Second Loan Equipment to Bulldog. In connection with the this lease, Bulldog executed a Lessee's Agreement, a copy of which is attached hereto as <u>Exhibit E</u>, pursuant to which Bulldog acknowledged and agreed that all its

rights under the lease, including its rights to possession of the Second Loan Equipment, are subordinate, junior and subject to the rights and claims of Citicapital.

20.      On or about June 2, 2009, Shirey and GECCI entered into a certain Modification Agreement (the "Second Loan Modification" and, together with the Second Loan and Security Agreement, the "Second Loan"), pursuant to which Shirey and GECCI agreed, *inter alia*, to modify the payments required from Shirey under the Second Loan and Security Agreement. A copy of the Second Loan Modification is attached hereto as <u>Exhibit F</u>.

C.      The Third Loan.

21.      On or about October 7, 2009, Shirey and GE Capital entered into that certain Master Note and Security Agreement, a copy of which is attached hereto as <u>Exhibit G</u>, the terms of which are incorporated into certain schedules executed in connection therewith (the "Master Loan Agreement"). Pursuant to Section 4 of the Master Loan Agreement, Shirey granted GE Capital a security interest in the equipment described on each schedule to the Master Loan Agreement (collectively, the "Third Loan Equipment") in order to secure the amounts due under the schedules. *Master Loan Agreement*, § 4.

22.      An event of default is deemed to have occurred under the Master Loan Agreement if, *inter alia*, Shirey fails to make any payment to GE Capital within ten days of its due date. *Id.*, § 10. Upon the occurrence of an event of default, GE Capital is entitled to exercise its rights as a secured creditor under the Uniform Commercial Code, including its right to enter upon Shirey's premises and take possession of the Third Loan Equipment.

23.      On October 7, 2009, Shirey executed Payment Schedule #001 to the Master Loan Agreement ("Schedule 001", and, together with the Master Lease Agreement, the "Third Loan"), a copy of which is attached hereto as <u>Exhibit H</u>, pursuant to which GE Capital financed Shirey's

acquisition of certain equipment described more fully therein in exchange for debt in the principal amount of $3,019,006.15, plus certain additional costs, fees and expenses.

        D.      The Bulldog Guaranty.

24.     On October 7, 2009, Bulldog executed an Unlimited Corporate Guaranty (the "Bulldog Guaranty"), pursuant to which Bulldog guaranteed: (i) the prompt payment of Shirey's indebtedness to GE Capital under the Third Loan, and (ii) the prompt performance of Shirey's obligations under the terms of the Third Loan. A copy of the Bulldog Guaranty is attached hereto as Exhibit I.

        E.      GECCI as Successor-In-Interest to Citicapital.

25.     On August 4, 2008, Citicapital merged with and into Citicorp Leasing, Inc. *See, Certificate of Merger of Citicapital Commercial Corporation*, a copy of which is attached hereto as Exhibit J.

26.     Thereafter, Citicorp Leasing, Inc. changed its name to GE Capital Commercial Inc. *See, Certificate of Amendment of Certificate of Incorporation*, a copy of which is attached hereto as Exhibit K.

27.     As a result, GECCI is a successor-in-interest by merger to the rights, claims and interests of Citicapital under the First Loan and the Second Loan, including, but not limited to, all of Citicapital's rights, claims and interests in the First Loan Equipment and the Second Loan Equipment.

        E.      The Defaults.

28.     Shirey has defaulted on his obligations under the First Loan, the Second Loan and the Third Loan (collectively, the "Loans") as a result of, *inter alia*, his failure to make payments when due under the terms of the Loans.

29.     On March 22, 2012, GECCI and GE Capital caused a notice of default to be served upon Shirey and Bulldog (the "Notice of Default"), a copy of which is attached hereto as Exhibit L.

30.     Pursuant to the Notice of Default, GECCI and GE Capital notified Shirey that he had failed to make not less than $509,829.62 in payments under the Loans when due, including: (i) not less than $291,795.12 under the First Loan; (ii) not less than $79,071.13 under the Second Loan; and (iii) not less than $138,963.37 under the Third Loan (collectively, the "Payment Defaults").

31.     The Notice of Default further demanded that Shirey cure the Payment Defaults on or before March 27, 2012.

32.     Shirey did not cure the Payment Defaults or otherwise cure the existing events of default under the Loans.

33.     As a result of Shirey's failure to cure the Payment Defaults, the amounts due under the loans were accelerated, and are now due and payable in full, together with additional interest, costs and fees, in their entirety.

34.     On April 24, 2012, as a result of Shirey's defaults under the Loans, GECCI and GE Capital sent a demand to Shirey and Bulldog requesting that they immediately turn over all items of the First Loan Equipment, the Second Loan Equipment and the Third Loan Equipment (collectively, the "Equipment") in their possession or control (the "Turn Over Demand") to GECCI and GE Capital.  A copy of the Turn Over Demand is attached hereto as Exhibit M.

35.     In addition, pursuant to the Turn Over Demand, GECCI and GE Capital demanded that Shirey and Bulldog immediately turn over any rental proceeds or profits related to

the Equipment (the "Rental Proceeds"), which profits and proceeds are subject to the security interests and liens of GECCI and GE Capital.

36.     To date, despite demand, neither Shirey or Bulldog have turned over any item of the Equipment or Rental Proceeds.  Instead, they continue to use the Equipment in the course of their business operations.

<u>COUNT I</u>

(Injunction: All Defendants)

37.     GECCI and GE Capital incorporate and reallege paragraphs 1 through 36 as paragraphs 1 through 36 of this Count I.

38.     Under the terms of the First Loan and the Second Loan, upon the occurrence of an event of default, GECCI is entitled to immediate possession of the First Loan Equipment and the Second Loan Equipment.

39.     Similarly, under the terms of the Third Loan, upon the occurrence of an event of default, GE Capital is entitled to immediate possession of the Third Loan Equipment.

40.     Despite demand by GECCI and GE Capital for return of the Equipment and the Rental Proceeds, Shirey and Bulldog continue to possess and utilize the Equipment.  They have also continued to collect the Rental Proceeds and have failed and refused to remit the same to GECCI and GE Capital.

41.     Much of the Equipment is highly mobile, and on any given day the Equipment is located in diverse places throughout the United States of America.

42.     The Equipment depreciates and deteriorates as a result of its continued use by Shirey and Bulldog, with no commensurate value being conferred to GECCI or GE Capital in the form of payments due and owing from Shirey or Bulldog.

43.    Shirey and Bulldog have or should have in place "command and control" capabilities to identify, locate, and surrender the Equipment, which capabilities may now be breaking down.

44.    GECCI and GE Capital will suffer irreparable injury for which no adequate remedy at law exists unless Shirey, Bulldog and other persons and firms having knowledge of this injunction are:  (a) immediately enjoined from continuing to use the Equipment; (b) ordered to immediately advise GECCI and GE Capital of the location of the Equipment; (c) ordered to immediately surrender the Equipment to GECCI and GE Capital, as appropriate; (d) ordered to immediately return the Equipment to a facility designated by GECCI and GE Capital; (e) ordered to immediately surrender the Equipment to GECCI and GE Capital in order to permit GECCI and GE Capital to take possession of the Equipment; (f) immediately enjoined from interfering with the access to the Equipment for said purposes;  (g) ordered to immediately sequester the Rental Proceeds and keep such proceeds separate and distinct from all other assets of the Defendants; and (h) immediately enjoyed from distributing the Rental Proceeds, or any portion thereof, until further order of Court.

WHEREFORE, GECCI and GE Capital pray that:

a.    Shirey and Bulldog be temporarily, preliminarily, and permanently enjoined from using the Equipment as of the date of entry of the injunction order, and other persons and firms having knowledge of the injunction, including without limitation the officers and directors of Borrowers having knowledge of the injunction, be similarly enjoined;

b.    Shirey and Bulldog be ordered to immediately disclose to GECCI and GE Capital the location of the Equipment;

c.    Shirey and Bulldog be ordered to immediately surrender the Equipment to GECCI and GE Capital;

d.      Shirey and Bulldog be temporarily, preliminarily, and permanently enjoined from restricting the access of GECCI and GE Capital to the Equipment;

e.      Shirey and Bulldog be ordered to immediately sequester the Rental Proceeds and keep such proceeds separate and distinct from all other assets of the Defendants;

f.      Shirey and Bulldog be immediately enjoyed from distributing the Rental Proceeds, or any portion thereof to any party other than GECCI or GE Capital, as appropriate;

g.      GECCI and GE Capital be awarded a judgment against Shirey and Bulldog, jointly and severally, for any damages sustained by GECCI and GE Capital;

h.      GECCI and GE Capital be awarded their costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

i.      GECCI and GE Capital be granted such other and further relief as shall be just and equitable.

<u>COUNT II</u>

(Specific Performance:  Shirey)

45.      GECCI and GE Capital incorporate and reallege paragraphs 1 through 44 as paragraphs 1 through 44 of this Count II.

46.      In the event of default by Shirey under the Loans, Shirey is obligated to return the Equipment at his expense to any location that GECCI and GE Capital direct.

47.      In the event of default by Shirey under the Loans, GECCI and GE Capital are entitled to take possession of the Equipment or direct Shirey to remove it to a place deemed convenient by GECCI and GE Capital.

48.      In the event of default by Shirey under the Loans, GECCI and GE Capital are entitled to repossess and remove the Equipment, wherever located.

49.      Despite demand by GECCI and GE Capital, Shirey has failed to cure his defaults

under the Loans and has failed to return the Equipment.

WHEREFORE, GECCI and GE Capital pray that:

a.    Judgment be entered in favor of GECCI and GE Capital and against Shirey directing Shirey to specifically perform his obligations under the Loans, and to return and allow the removal of the Equipment by GECCI and GE Capital;

b.    GECCI and GE Capital be awarded judgment against Shirey for any damages sustained by GECCI and GE Capital;

c.    GECCI and GE Capital be awarded their costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

d.    GECCI and GE Capital be granted such other and further relief as shall be just and equitable.

COUNT III
(Claim and Delivery:  Shirey and Bulldog)

50.    GECCI and GE Capital incorporate and reallege paragraphs 1 through 49 as paragraphs 1 through 49 of this Count III.

51.    This claim is brought pursuant to S.C. Code Ann. § 15-69-10 *et seq.*

52.    Pursuant to the terms of the Loans, Shirey granted GECCI and GE Capital a first priority security interest in the Equipment.  In addition, Bulldog has subordinated any possessory interest it may have in the Equipment to the interests of GECCI and GE Capital.

53.    Based upon the best knowledge, information, and belief of GECCI and GE Capital, the following items of Equipment are currently in the possession of Bulldog and/or Shirey, and are located at the Newberry Location: (i) the Manitowoc 18000 with serial number 1800-1051; (ii) the Manitowoc luffing jib with serial number 1600-5020; (iii) the Manitowoc luffing jib with serial number 1800-5035; and (iv) the Manitowoc 4100-S-2 with serial number

41712 (collectively, the "Bulldog Yard Equipment").

54.     Certain other items of equipment have been leased or subleased by Shirey or Bulldog to third parties as follows: (i) the Manitowoc 16000 with serial number 1600-1036 is currently in the possession of CJ Crane Service, and is located in Mandan, North Dakota; (ii) the Manitowoc maxer with serial number 2100-3041 and the Manitowoc 160000 with serial number 1600-1050 are currently in the possession of to Shaw Power, and are located in Jenkinsville, South Carolina; (iii) the Manitowoc 4100-S-2 with serial number 41646 is currently in the possession of Balfour Beatty, and is located in Savannah, Georgia (collectively, the "Job Site Equipment")

55.     As a result of the defaults under the Loans, GECCI and GE Capital are lawfully entitled to immediate possession of the Equipment.

56.     GECCI and GE Capital have made demand for return of the Equipment, but Shirey and Bulldog have failed and refused, and continue to fail and refuse, to return the Equipment.   As a consequence thereof, the Equipment is wrongfully detained by Shirey and Bulldog.

57.     GECCI and GE Capital have also demanded that Shirey and Bulldog immediately turn over any profits or proceeds of the Equipment to GECCI and GE Capital, including, but not limited to, any rental proceeds or profits attributable to the Job Site Equipment.

58.     With regard to the Bulldog Yard Equipment, GECCI and GE Capital are unaware of the reason for the continued failure and refusal of Shirey and Bulldog to return the Equipment. In addition, they are unaware of the reason for the continued failure and refusal of Shirey and Bulldog to remit the rental proceeds derived from the rental of the Job Site Equipment to GECCI and GE Capital.

59. The Equipment has not been (i) taken for any tax, assessment or fine pursuant to any law or statute or seized under an execution or attachment against the property of GECCI and GE Capital.

60. Although GECCI and GE Capital have not recently completed appraisals for the the Equipment, GECCI and GE Capital are informed and believe that the Equipment has an orderly liquidation value of approximately $11,581,000.

61. During, and as a proximate result of, the wrongful possession and detention of the Equipment by Shirey and Bulldog, GECCI and GE Capital have suffered the loss of the use and enjoyment of the Equipment and the loss of the use and enjoyment of the Rental Proceeds.

62. During, and as a proximate result of, the wrongful possession and detention of the Equipment by Shirey and Bulldog, GECCI and GE Capital have suffered the loss of the depreciation of the Equipment and the depreciation of the Rental Proceeds..

63. By virtue of the wrongful possession of GECCI's and GE Capital's personal property by Shirey and Bulldog, GECCI and GE Capital are entitled to and demand immediate possession of the Equipment and the immediate possession of Rental Proceeds; as well as judgment for claim and delivery of the Equipment and for claim and delivery of the Rental Proceeds.

WHEREFORE, GECCI and GE Capital pray for judgment as follows:

a. For possession of the Equipment and the Rental Proceeds;

b. For a judgment against Shirey and Bulldog for the value of the Equipment and the Rental Proceeds if not delivered;

c. For a judgment against Shirey and Bulldog for damages for detention;

d. For costs, attorneys' fees, and interest on all unpaid amounts due and owing; and

e. For such other and further relief as the court may deem proper.

## COUNT IV
### (Breach of First Loan and Second Loan:  Shirey)

64.    GECCI incorporates and realleges paragraphs 1 through 63 as paragraphs 1 through 63 of this Count IV.

65.    The First Loan and the Second Loan constitute valid contractual obligations of Shirey.

66.    Shirey has breached the First Loan and Second Loan by failing to abide by his obligations under the same.

67.    In contrast, at all times relevant hereto, GECCI has continued to abide by its obligations under the First Loan and the Second Loan.

68.    Under the First Loan and the Second Loan, GECCI is entitled to contractual money damages from Shirey as provided therein, both for the arrearages in payments due thereunder and for the damage inflicted upon the First Loan Equipment and the Second Loan Equipment, as well as any and all additional damages specified as a remedy after default.

WHEREFORE, GECCI prays that this Court enter a judgment in its favor and against Shirey in the amount due under the First Loan and the Second Loan, the exact amount to be proven prior to or at trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

## COUNT V
### (Breach of Third Loan: Shirey)

69.    GE Capital incorporates and realleges paragraphs 1 through 68 as paragraphs 1 through 68 of this Count V.

70.    The Third Loan constitutes a valid contractual obligation of Shirey.

71.     Shirey has breached the Third Loan by failing to abide by his obligations under the same.

72.     In contrast, at all times relevant hereto, GE Capital has continued to abide by its obligations under the Third Loan.

73.     Under the Third Loan, GE Capital is entitled to contractual money damages from Shirey as provided therein, both for the arrearages in payments due thereunder and for the damage inflicted upon the Third Loan Equipment, as well as any and all additional damages specified as a remedy after default.

WHEREFORE, GE Capital prays that this Court enter a judgment in its favor and against Shirey in the amount due under the Third Loan, the exact amount to be proven prior to or at trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

COUNT VI<br>(Breach of Guaranty:  Bulldog)

74.     GE Capital incorporates and realleges paragraphs 1 through 73 as paragraphs 1 through 73 of this Count VI.

75.     The Bulldog Guaranty constitutes a valid contractual obligation of Bulldog.

76.     Bulldog has breached the Bulldog Guaranty by failing to abide by its obligations under the same.

77.     In contrast, at all times relevant hereto, GE Capital has abided by its obligations under the Bulldog Guaranty.

78.     Pursuant to the Bulldog Guaranty, GE Capital is entitled to contractual money damages from the Bulldog as provided therein.

WHEREFORE, GE Capital prays that this Court enter a judgment in its favor and against

Bulldog in the amount due under the Bulldog Guaranty, the exact amount to be proven prior to or at trial, plus its attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable.

Respectfully submitted,

GENERAL ELECTRIC CAPITAL CORPORATION and GE CAPITAL COMMERCIAL, INC.

By:   s/Palmer Freeman
      Palmer Freeman (Fed. I.D. #894)
      601 Devine Street
      Columbia, SC 29201
      Ph:  803-799-9400
      Fax:  803-376-5084

Columbia, South Carolina
May 18, 2012.

Of Counsel:

Ann E. Pille
REED SMITH
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Ph: 312-207-3870
Fax: 312-207-6400